IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02255-SKC

JANE DOE, a United States resident and citizen,

                *Plaintiff,*

v.

MARK ANTHONY YOUNG, a United Kingdom citizen, and
Elite AB Clinic, a United Kingdom corporation,

                *Defendants.*

**REDACTED MOTION TO ENFORCE CONFIDENTIAL SETTLEMENT AGREEMENT AND REQUEST FOR ATTORNEY'S FEES AND COSTS**

Plaintiff Jane Doe (hereinafter "Plaintiff" or "Ms. Doe") respectfully moves this Court to enforce the confidential settlement agreement confirmed by Plaintiff and Defendant Mark Anthony Young (hereinafter "Defendant" or "Defendant Young") (collectively the "Parties) on March 31, 2025, on the record. This Motion is redacted per order of this Court. In further support of this Motion, Plaintiff states as follows:

**D.C.COLO.LCivR 7.1 CONFERRAL STATEMENT**

Over the course of several weeks, and no less than four emails, Plaintiff's undersigned counsel made good faith attempts to confer on the foregoing Motion with Defendant Young and resolve disputes related to the confidential settlement agreement. This included, but is not limited, to undersigned counsel making herself

1

available on May 2, 2025, and May 3, 2025, to confer about the matter over virtual conference. Defendant Young has been unavailable, and per the extensive email communications with Defendant Young on the terms, as well as the time zone difference with the United Kingdom, further conferral over video conference would be fruitless as in *Farmer v. Banco Popular of North America,* No. 13-1252 (10th Cir. 2014).

## STANDARD OF REVIEW

A settlement agreement is a contract between the parties to end judicial proceedings. *Citywide Bank of Denver v. Herman,* 978 F.Supp. 966, 977 (D. Colo. 1997). The construction and enforcement of a settlement agreement are determined by reference to state law contract principles. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). When determining issues regarding the enforceability of a settlement agreement, the court applies state law. *Rogler v. Standard Ins. Co.*, 30 F. App'x 909, 913 (10th Cir. 2002) (citing *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)).

Courts possess the inherent power to enforce the terms of settlement agreements in resolution of litigation. *Colorado Compensation Ins. Authority v. Jorgensen*, 992 P.2d 1156, 1160 (Colo. 2000). Courts endorse compromise and settlements because they save the parties time and money; conserve the limited

resources of the court; promote the swift resolution of controversies; and negate the prospect of lengthy appeals. *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008).

## JURISDICTION

Courts have inherent power to enforce settlements between the parties in cases pending before them. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); see also *Román-Oliveras v. Puerto Rico Elec. Power Auth. (PREPA)*, 797 F.3d 83, 86–87 (1st Cir. 2015) (power to enforce binding oral settlement before case dismissal); *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

Under the Court's ancillary jurisdiction, the Court has "the power to conduct proceedings necessary to protect and give effect to its judgments." *Atlas Biologicals*, 50 F.4th at 1321 (citing *Sandlin v Corp. Interiors, Inc.,* 972 F.2d 1212, 1216 (10th Cir.1992)). "[A]ncillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1319 (10th Cir. 2022) (citing *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)). Such jurisdiction is referred to as "enforcement jurisdiction," and "judicial power would be incomplete" without it. *Sandlin*, 972 F.2d at 1216. Ancillary power includes those actions by the Court which "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, see, e. g., *Chambers v. NASCO, Inc.*, 501 U. S. 32 (1991)

(power to compel payment of opposing party's attorney's fees as sanction for misconduct); *United States v. Hudson*, 7 Cranch 32, 34 (1812) (contempt power to maintain order during proceedings)." See *Kokkonen,* 511 U.S. 375 at 380.

## BACKGROUND

On March 31, 2025, the Parties engaged in a settlement conference, which resulted in a confidential, signed memorandum of the material terms of settlement ("Material Terms of Settlement") confirmed on the record with this Court. (ECF No. 229). The Parties agreed to the following per ▮▮▮▮▮▮▮▮▮▮ the Material Terms of Settlement Agreement:



See **Exhibit 1-Material Terms of Settlement Agreement.**

Undersigned counsel on April 3, 2025, provided Defendant Young with a draft of the formal Final Settlement Agreement. Defendant Young delayed providing undersigned counsel with any redlines or feedback until April 29, 2025, despite repeat emails and outreach — he met each status check on the edits with one reason or another, ranging from "awaiting legal advice" to bank holidays after they have passed (and outside their time-period). See **Exhibit 2-**Email

Correspondence with Defendant Pt. I, and **Exhibit 3**- Recognized Bank Holidays on UK Companies House Website.

After receiving no response from Defendant Young for several days, undersigned counsel on April 7, 2025, sent him an email requesting an "ETA on [his] review and response." **Exhibit 2**, pp. 6. Defendant Young emailed back the next day that he "[w]ill be sending back Thursday/Friday." *Id.* When Defendant Young's self-imposed deadline passed with no communication, undersigned counsel on Monday, April 14, 2025, sent another email:

> "It has been two weeks since this matter settled and I need to get the documents to the Court in short-order.
>
> Please advise ASAP. Thank you."

See **Exhibit 2**, pp. 5. Defendant Young after almost complete radio silence over the weeks emailed back later that same day, "I am awaiting legal advice due to your client ▮▮▮▮▮." *Id.*

Undersigned counsel reviewed a screenshot provided by Defendant Young, and subsequently sent him the following email in response on April 14, 2025:

> "This screenshot does not indicate there has been ▮▮▮▮▮
>
> Regardless, I need an ETA on the legal advice and redlines (if any). As an aside, this social media post appears to have been made days after you told me you would have a response. This does not address your delay."

See **Exhibit 2**, pp. 4-5.

Defendant Young on April 14, 2025, represented in a subsequent email he needed time to further review and provide redlines. *Id*. Undersigned counsel waited another ten days before sending another email to Defendant Young. The email reads:

> "We are going on ten days from your last email without any word. Tomorrow will be 21 days from the date on which you were provided a copy of the formal document.
>
> Please provide any redlines by 12:00 pm EST on 4/24/25, so that I can have time to review and either incorporate or reject your redlines. If I do not receive your redlines by tomorrow at 12:00 pm EST, my client is prepared to file a motion to compel and enforce the settlement agreement with the court. My firm will be asking for attorney fees and costs if this is the course you force her to go.
>
> If you did seek legal advice as you indicated on April 14, 2025 ("awaiting legal advice"), then we can move this along if you provide me with the contact information for the attorney. Otherwise, I can't imagine who or what would be causing you to be "awaiting legal advice.""

*Id*. at pp. 3.

Defendant Young responded:

> "I will be returning Items on Tuesday, April 29th, as we have had bank holidays here in the United Kingdom […] If your office wishes to proceed with a motion to compel, you are of course free to do so […]"

*Id*. at pp. 3-4.

When Defendant Young on April 29, 2025, finally produced an edited document (absent redlines), undersigned counsel discovered he added material

terms and made changes the likes of which no party negotiated at the March 31, 2025, settlement conference, including but not limited to:

1. "Clarification ███████████████████████████████████████████ See **Exhibit 4**-Email Correspondence with Defendant Young Pt. 2, pp. 13.
2. "Modification of ███████████████████████████████████ *Id.*
3. "Minor clarification ██████████████████████████████." *Id.*

Defendant Young also attempted to change other already agreed-upon material terms, including ████████████████████████████████. *Compare* **Exhibit 1,** ¶ 2 ("████████████████████████████████"), and **Exhibit 5,** ¶ 2 ("████████████████████████████████"). Defendant Young further changed the language in ██████████ to the Material Terms of Settlement from "████████████████████" to "████████████████████████" *Compare* **Exhibit 1,** ¶ 6, and **Exhibit 5,** ¶ 2. Defendant Young also added language providing for ████████████████████████████████████████████. *Compare* **Exhibit 1,** ¶¶1-7, and **Exhibit 5,** ¶ 10 ("████████████████████████████████████████████████████████████").

▓▓▓▓"). Undersigned counsel informed Defendant Young that Ms. Doe cannot agree to changes to the Material Terms of the Settlement Agreement, and noted that the Parties did not include ▓▓▓▓ ▓▓▓▓. See **Exhibit** 4, pp. 7.

Undersigned counsel as a compromise agreed to limit ▓▓▓▓ ▓▓▓▓ to the explicit language contained in ▓▓▓▓ the Material Terms of Settlement Agreement ("▓▓▓▓ ▓▓▓▓"), but refused to add Defendant Young's language ▓▓▓▓ ▓▓▓▓.

Despite representing that he would sign an agreement which uses the language of the Material Terms of Settlement, Defendant Young to date has not signed the formal Final Settlement Agreement attached at **Exhibit 6.** Defendant Young provided edits on May 1, 2025, which included, among other items, (1) ▓▓▓▓ ▓▓▓▓, (2) removal of ▓▓▓▓ ▓▓▓▓ ▓▓▓▓, (3) ▓▓▓▓ ▓▓▓▓, (4) removal of ▓▓▓▓ ▓▓▓▓ of the Material Terms of Settlement, and (5) removal of ▓▓▓▓



8

███████████████████████████████. See **Exhibit 7**. As of May 2, 2025, Defendant Young remains firm in his request to include ███████████████████ ███████████████████████████████████. See **Exhibit 4**.

## LEGAL ARGUMENT

I.  **The Parties Must Execute the Formal Final Settlement Agreement and Stipulation of Dismissal with Prejudice.**

The Material Terms of Settlement Agreement as submitted to this Court represent the entire agreement of the Parties on material terms as evident from its title, and the attached formal Final Settlement Agreement should be approved and enforced. "When the parties to an agreement have reduced it to writing in such form as to import a valid legal obligation, complete and unambiguous in its terms, with no uncertainty as to the extent of the obligation, it is, in the absence of fraud, accident, or mistake, conclusively presumed that the writing constitutes the whole engagement of the parties, and no extrinsic evidence of prior or contemporaneous negotiations between the parties [is] admissible to vary or qualify the written contract." *Knight-Campbell Music Co. v. Buck*, 95 P. 283 (Colo. 1908), citing *Oil Creek G. M. Co. v. Fairbanks, Morse & Co.*, 74 P. 543 (Colo. App. 1903). There is nothing in the Material Terms of Settlement that addresses ████████ ███████████████████████████████████████████, or ███████████████ ████████. The Parties reached an agreement to end the litigation and resolve the

9

proceedings pending before this Court. The Material Terms of Settlement Agreement is a fully enforceable contract, accepted by both parties and supported by consideration, and it should be enforced without adding any term that ███████ ███████████████████████████████████████ .

In *Thomason v. McAlister,* the Colorado Court of Appeals upheld a stipulation for settlement when the stipulating party was fully advised of its material terms. After both parties reached a stipulation for settlement, the defendant refused to execute a written version of the stipulation, claiming that he did "not have knowledge or understanding of the settlement and, therefore, did not consent to the agreement." *Thomason v. McAlister,* 748 P.2d 798, 800 (Colo. App. 1987). The trial court, nonetheless, reduced the stipulation to judgment, which the defendant then appealed. *Id.* at 799. The Court of Appeals ultimately found that the trial court did not act in error by reducing the stipulation to judgment. *Id.* at 800. The Court explained that although the defendant was not physically present during the settlement conference, he was fully advised of its material terms by his attorney over the telephone and that he agreed on the record to execute the settlement following the conference. *Id.*

As in *Thomason*, Defendant Young was fully advised of the material terms of the settlement agreement by virtue of his signature on the attached Material Terms of Settlement Agreement, and his subsequent verbal confirmation on the record of

his assenting to the terms at ECF No. 229 ("The parties acknowledge an agreement has been reached as to all claims and have executed a material terms sheet."). The Parties both placed their voluntary agreement to the confidential Material Terms of Settlement on the record, and Defendant Young indicated his understanding of and voluntary agreement to such terms. Looking at the express words of the Parties and their visible acts, as the Court is required to do, there was a meeting of the minds as to the terms of the settlement, and the fact that it appears that Defendant Young has disputes with Plaintiff or other unrelated non-parties, whether founded or not, is insufficient to undo the settlement that was fairly made and put on the record. See *H.W. Houston Constr. Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981) ("In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement"); see also *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 888 (Colo. 1986) ("The evidence must show that the parties agreed upon all essential terms")

Since the Parties agreed on all material terms, they are obligated to perform those terms. Thus, Defendant Young should be required to execute the formal Final Settlement Agreement and any other required paperwork to complete the settlement that was reached. In *Farmer v. Banco Popular of North America,* No. 13-1252 (10th Cir. 2014), the Tenth Circuit granted a motion to enforce and ordered the noncomplying party to execute the formal final settlement agreement

paperwork where "[r]ather than adhering to the terms of the settlement agreement, [the defendant] has multiplied the proceedings, causing the court to expend considerable effort, [the plaintiff] to incur attorney's fees, and delaying the ultimate resolution." See **Exhibit 8-** *Farmer v. Banco Popular of North America,* No. 13-1252, pp. 14 (10th Cir. 2014). The events which led up to the motion to enforce in *Banco* mirror those before this Court, including undue delay, continued changes to nonmaterial terms, and position reversal:

> "Farmer then filed an action against Banco Popular in Colorado state court, alleging twelve claims for relief. He sought damages and a judgment that the HELOC be voided. Banco Popular removed the action to federal court and initiated foreclosure proceedings on the New Jersey property. The parties had multiple settlement conferences with a magistrate judge, who held a hearing on June 15, 2012, and placed the terms of a settlement agreement on the record
>
> [….]
>
> The same day as the hearing, Banco Popular sent Farmer a draft settlement agreement and IRS Form W-9, Request for Taxpayer Identification Number and Certification.
>
> […]
>
> Farmer completed and signed the W-9 the same day and returned it to Banco Popular, but he began to negotiate a number of the other terms of the draft agreement, none of which had to do with the tax issue. Banco Popular rejected most of those changes. On July 2, Banco Popular sent Farmer the completed settlement agreement, but Farmer sought changes t o the exhibits.
>
> […]
> After Farmer received the revised exhibits, he again sought more changes, including the amount, timing, and structure of the payment.

> […]
>
> On August 7, Banco Popular declined those requests, stating it would file a motion to enforce the settlement agreement unless Farmer tendered the executed agreement before a court hearing scheduled for the next day. In an August 8 email to Banco Popular's counsel, Farmer stated that he was "in agreement with the last version of the Settlement Agreement."
>
> […]
>
> The parties' further discussions proved fruitless, so Banco Popular filed a motion to enforce."

*Id.* at pp. 10-12.

As in *Banco*, "[t]he district court has all lawful authority to bring this matter to a prompt and just conclusion." *Id.* at pp. 14. That includes the power to order Defendant Young "to execute all necessary documents to effectuate the settlement" in a situation where continued negotiations would prove fruitless as evident from emails dated April 3, 2025, through May 3, 2025. See *Id.* at pp. 13 (citing *Lee v. Hunt,* 631 F.2d 1171, 1173, 1181 (5th Cir. 1980)).

### II. This Court May Award Attorney's Fees and Costs For Defendant Young's Delay and Failure to Execute the Formal Final Settlement Agreement.

A party may, on noticed motion, be sanctioned for refusing to sign a written settlement that embodies terms orally agreed to before the court: "An agreement announced on the record becomes binding even if a party has a change of heart after (he or she) agreed to its terms but before the terms are reduced to writing." See *Doi*

*v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002); also *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489–490 (7th Cir. 2002).

As here, a court may impose fees and costs on Defendant Young as a punitive sanction for an extended delay in executing a settlement agreement. See **Exhibit 9**- *Farmer v. Banco Popular*, No. 14-1423 (10th Cir. 2015) (Now here we are again, this time to consider Farmer's appeal from a district court order imposing fees and costs on him as a punitive sanction for his extended delay in executing the settlement. We exercise jurisdiction under 28 U.S.C. § 1291, and again affirm, while modifying the district court's reasoning and the amount of sanctions imposed").  Per preceding sections, Defendant Young appears to have made numerous misrepresentations, including  awaiting legal counsel and retaining an attorney, as his grounds for delay. His cooperation, and representations as to agreement on terms, have ebbed and flowed with aggravation from an unrelated, non-party drawing attention to Defendant Young's own publication of the authorized settlement statement. See **Exhibit 10-**Twitter Post of Joint Statement by Defendant Young; see also **Exhibit 11**-April 2, 2025, Email Correspondence with Defendant Young. At  various points, Defendant Young in emails stated he agreed to specific language, only to return later with contradictory edits, or demands. Much of this followed aggravations caused by social media interactions with an unrelated nonparty which Defendant Young repeatedly has misconstrued as colluding with

14

Plaintiff. At this time, neither Plaintiff nor her undersigned counsel have reason to believe that further delay into next week will result in a signed formal agreement, especially Ms. Doe has no ability to control what developments on social media by third-parties might cause Defendant Young to reverse his position. See **Exhibit 2**, pp. 4 ("delay stems from […] third-party posts").

## CONCLUSION

WHEREFORE, Ms. Doe requests this Court enter an order requiring Defendant Mark Young to sign the formal Final Settlement Agreement and Joint Stipulated Notice of Dismissal attached at Exhibits 6 and 12, and award attorney's fees and costs to Ms. Doe.

Respectfully submitted this 18th day of July 2025,

/s/Cassandra M. Kirsch
***Cassandra M. Kirsch, # 46502***
YATOOMA LAW, P.C.
100 Renaissance Center, Ste. 2-2101 #43437
 Detroit, MI, 48243
Telephone: (248) 481-2000
E-mail: ckirsch@normanyatooma.com
Attorney for Plaintiff Jane Doe

***Original Signature on File***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, and have served it on Defendant Mark Anthony Young via email at markyoung@eliteabclinic.com.

/s/Cassandra M. Kirsch
*Cassandra M. Kirsch, # 46502*
YATOOMA LAW, P.C.
100 Renaissance Center, Ste. 2-2101 #43437
Detroit, MI, 48243
Telephone: (248) 481-2000
E-mail: ckirsch@normanyatooma.com
Attorney for Plaintiff Jane Doe

*Original Signature on File*

## CERTIFICATE REGARDING NON-USE OF GENERATIVE ARTIFICIAL INTELLIGENCE (AI) IN COURT FILINGS

I hereby certify that on July 18, 2025, no portion of this filing was drafted by generative AI. All legal citations were the result of direct research by counsel. All legal citations are to actual, non-fictitious cases or cited authority.

/s/Cassandra M. Kirsch
*Cassandra M. Kirsch, # 46502*
YATOOMA LAW, P.C.
100 Renaissance Center, Ste. 2-2101 #43437
Detroit, MI, 48243
Telephone: (248) 481-2000
E-mail: ckirsch@normanyatooma.com
Attorney for Plaintiff Jane Doe

*Original Signature on File*